MIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS BROWN, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | 05 C 3810 |
| ) | Judge Manning |
| GC AMERICA, INC., a Delaware ) | |
| corporation, KENT FLETCHER, ) | |
| DOMINIC BARAZZA, and GEORGE ) | |
| GESSE, ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

Currently before the court is the defendants' motion to dismiss the complaint with prejudice and in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion to dismiss is denied in part and granted in part.

**I.      Background**

The following facts are taken from the plaintiff's complaint and accepted as true for purposes of this motion. The plaintiff, Douglas J. Brown, DDS, is a dentist and suffers from reflex sympathetic dystrophy (RSD), also known as complex regional pain syndrome, a disorder of the nervous system. Although no longer able to practice dentistry as a result of his disease, Brown was hired by defendant GC America, Inc. ("GCA") as its director of clinical affairs and professional relations in November 2002, an executive-level position which also placed him on the American board of directors of GCA. According to the defendants' motion to dismiss, GCA is a manufacturer and distributor of dental materials, such as impression materials, glass ionomer, restoratives and bonding agents, and composite resins. Defendant Kent Fletcher is the president of GCA.

Fletcher and GCA were aware of Brown's disabilities when he was hired. While Brown alleges that he did an exemplary job in his new position, he states that defendant Dominic Barazza, the then-director of marketing at GCA, confronted Brown soon after he was hired and told him that GCA did not need a "disabled dentist" as its director of professional relations. According to Brown, Barazza began a "continuous course of abusive conduct intended to force Brown out of GCA." Comp. at ¶12. These incidents included instructing employees not to cooperate with Brown, telling employees to stack boxes in front of Brown's office so that he could not gain entrance, and telling individuals both inside and outside the company that he did not think that Brown, a non-practicing dentist, should be in the position for which he was hired.

Brown reported the behavior to Fletcher, his supervisor at the time, and told him that Barazza's conduct was damaging his health. Fletcher assured Brown that he "would address" the problem, but never took any action and only told Brown that "change takes time." According to Brown, because of the continued poor treatment by members of the marketing department, Brown's RSD flared up and he was afflicted with vertigo. At this time, in or around June 2004, Brown alleges that Fletcher no longer even feigned support for Brown and had in fact told other GCA executives that he wanted to "disengage" the company from Brown. According to Brown, GCA began to marginalize him in various ways, including not offering or not considering him for positions within GCA for which he was particularly qualified.

As GCA's alleged campaign to get Brown to resign continued, Brown's health declined further, including a relapse of his RSD and the diagnosis of a new heart condition. Brown alleges that he was forced to take a medical leave of absence "because of the discriminatory conduct of GCA."

Brown's claims include: a violation of the American with Disabilities Act ("ADA") (Count I); intentional infliction of emotional distress ("IIED") (Count II); defamation against Fletcher and GCA (Count III); defamation against Gesse and GCA (Count IV). The defendants have moved to dismiss each count.

**II.     Standard on Motion to Dismiss**

The court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

    **A.     ADA**

        1.     <u>Hostile work environment</u>

The defendants first argue that the Seventh Circuit has not recognized a cause of action for hostile work environment under the ADA and the statutory scheme does not provide for it. However, as noted by the parties, while not expressly ruling that such a cause of action exists, the Seventh Circuit has assumed that it does. *Silk v. City of Chicago*, 194 F.3d 788, 803-04 (7th Cir. 1999). *See also Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) (noting that the Seventh Circuit has assumed the existence of a hostile work environment claim under the ADA and that

"the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII") (citations omitted). Given this assumption by the Seventh Circuit, the court will not dismiss the ADA claim on this basis.

The defendants next argue that the hostile work environment claim should be dismissed because Brown has failed to allege that the alleged hostile environment was sufficiently severe or pervasive to be actionable. *Mannie*, 394 F.3d at 982 ("A hostile work environment exists where an employee experiences harassment that is 'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'") (citation omitted). In order to determine whether conduct is severe or pervasive, courts look to such factors as "the frequency, severity, and threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interferes with [her] work performance." *Id.* at 983.

Brown argues that it is premature to dismiss the case because he will be able to produce evidence, presumably at summary judgment or trial, that the defendants created a hostile working environment. While acknowledging that other courts have dismissed hostile work environment claims at the pleading stage, this court is unwilling to make that determination at this time in light of the allegations in Brown's complaint and the liberal notice pleading standards in the federal rules. *Cole,* 389 F.3d at 724 (at the motion to dismiss stage, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). Because Brown has adequately pled a hostile work environment claim under Fed. R. Civ. P. 8, the court denies the defendants' motion to dismiss the hostile work environment claim.

## 2. Constructive Discharge

The defendants assert that no cause of action exists for constructive discharge under the ADA. However, the Seventh Circuit has reached the merits of a constructive discharge ADA claim. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 382-83 (7th Cir. 2005). Again, given that the Seventh Circuit assumed such a cause of action exists without expressly so holding, this court will as well.

The defendants next contend that Brown has failed to plead that he had no alternative but to leave GCA, and as such, his constructive discharge claim should be dismissed. However, Brown alleges in his complaint that "[i]nstead of stopping the abusive conduct, Fletcher, in particular, on behalf of GCA, fostered and encouraged the continuous course of conduct described above in order to force Dr. Brown to resign." Comp. at ¶35. Further, Brown states in his response that his doctors demanded that he leave GCA in order "to protect his health and ultimately, his life." Resp. at 6.

"A plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief in order to defeat a motion to dismiss if these facts are consistent with the allegations in the complaint." *Birch v. Jones*, 02 C 2094, 2003 WL 21210107, at *2 (N.D. Ill. May 21, 2003) (internal citations omitted). Indeed, "if it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (*quoting Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)).

Here, Brown has alleged both in his complaint and more fully in his response that he was compelled to leave because of the harassment by GCA employees and executives. Further, the

defendants' challenge to the merits of the constructive discharge claim (i.e., that the circumstances alleged in the complaint are not severe enough to support a constructive discharge claim) are, as with the hostile work environment claim, premature.[1] Because Brown's complaint adequately states a claim for constructive discharge, the court denies the defendants' motion to dismiss this part of Brown's ADA claim.

### B. Preemption of IIED claim

#### 1. Preemption by the Illinois Human Rights Act ("IHRA").

The defendants next maintain that Brown's IIED claim is preempted by the IHRA because: (a) the IHRA preempts tort claims that are inextricably linked to allegations of discrimination and requires that such claims be brought before the Illinois Human Rights Commission, and (b) the IHRA preempts a plaintiff's IIED claim if the claim is not actionable aside from its character as a civil rights violation. *Quantock v. Shared Marketing Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002).

The Seventh Circuit addressed this issue in *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000), and stated:

> The IHRA prohibits employment discrimination based on a person's handicap. 775 ILCS 5/1-101, *et seq*. The IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of [that] statute." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1276 (Ill.1994). However, where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA. That is, if the conduct would be actionable even aside from its character as a civil rights

---

[1] Moreover, to the extent that the defendants argue that Brown could not have been constructively discharged because he abandoned his job by not returning from his medical leave, this contention is outside of the four corners of the complaint and, therefore, not properly before the court on a motion to dismiss. The defendants will have an opportunity later in this case to argue their position *with evidentiary support*.

> violation because the IHRA did not "furnish[ ] the legal duty that the defendant was alleged to have breached," the IHRA does not preempt a state law claim seeking recovery for it. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 23 (1997) (holding that the plaintiff stated independent state law tort claims for assault, battery and false imprisonment that were not inextricably linked to her claim of sexual harassment).

In *Krocka*, the Seventh Circuit affirmed the district court's dismissal of the IIED claim pursuant to Rule 12(b)(6) as preempted under the IHRA because "the alleged comments were inextricably linked to Krocka's disability discrimination claim because they were only offensive to the extent that they referred to Krocka's disability." *Id*. at 517.

The court finds that the allegations of GCA's extreme and outrageous behavior (including stacking boxes in front of Brown's office, telling others inside and outside of GCA that Brown should not be the director of professional relations, and not considering Brown for other positions within GCA) are inextricably linked to Brown's disability claim. The conduct described does not to rise to the level of conduct that would support an independent claim for IIED (*see McDowell v. J.B. Hunt Transport, Inc*., No. 03 C 6590, 2004 WL 1878334, at *6 (N.D. Ill. Aug. 10, 2004) ("'Liability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'") (citations omitted)), and might do so only because it is allegedly based on Brown's disability. Accordingly, Brown's IIED claim is preempted by the IHRA; thus, the court grants the defendants' motion to dismiss the IIED claim on this ground. *Frederic v. Northwestern Memorial Hosp.*, No. 04 C4443, 2005 WL 1563136, at *5 (N.D. Ill. June 7, 2005).

The defendants also seek dismissal of the IIED count on the grounds that: (a) the IIED claim is preempted by the Illinois Workers' Compensation Act and (b) the conduct does not meet

the standard for liability for IIED. However, because the court has held that the claim is preempted by the IHRA, it will not address these arguments.

    **C.    Defamation Claim**

        1.    <u>Against Fletcher and GCA</u>

The defendants argue that Brown's claim for defamation should be dismissed because the alleged statements were not defamatory. According to Brown's complaint, two comments by Fletcher were defamatory *per se.* First, Brown alleges that while presiding at a March 2005 meeting of the GCA executive committee, Fletcher and the executive committee discussed an incident between defendant Gesse and Brown in which Gesse allegedly "publicly yell[ed]" at Brown at a hotel in Chicago in front of several other dental professionals. According to Brown, Fletcher said to the committee that the conduct of Gesse and Brown would not be tolerated and that Brown "now has a strike against him." The second alleged comment by Fletcher relates to a 2004 accusation made by a former employee of GCA apparently regarding supposed sexual harassment by Brown. Brown alleges that despite the fact that the "accusation" was totally false, was immediately proven to be untrue, was retracted and the accusing employee had been fired, Fletcher still told others at the March 2005 executive committee that Brown had "issues" with defendant Barazza related to the "charges" of sexual harassment that were "still open."[2]

"To prevail on a state law claim for defamation a plaintiff must show that: (1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of

---

[2]In his complaint, Brown alleges that "no such *charge* [of sexual harassment] had ever been made against Dr. Brown." Comp. at ¶49 (emphasis added). Brown alleges only that an unsubstantiated "accusation" was made against him, but fails to allege the subject matter of the accusation.

the defamatory statement to a third party by the defendant, and (3) the plaintiff has suffered damages." *Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2003) (*citing Gibson v. Philip Morris, Inc.*, 292 Ill.App.3d 267, 226 Ill.Dec. 383, 685 N.E.2d 638, 643 (1997)). "Statements are considered defamation *per se* when the defamatory character of the statement so obviously injures the plaintiff's good name or reputation that the plaintiff need not prove injury or damages." *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1231 (Ill. App. Ct. 1995) (*citing Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 9-10, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992)). There are five specific categories of statements considered defamatory per se: (1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business. *Kim v. Kim*, 360 F. Supp. 2d 897, 901 (N.D. Ill. 2005).

However, certain defenses exist to comments even if they are deemed defamatory *per se*. For example, if a comment is reasonably capable of innocent construction, it is not actionable even if it falls into one of the categories of defamation per se. *Quinn,* 658 N.E.2d at 1231 ("The innocent construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning."). Moreover, words that are defamatory may not be actionable if they are constitutionally protected expressions of opinion. *Id*. at 1229-30; *see also Hopewell v. Vitullo*, 701 N.E.2d 99, 103 (Ill. App. Ct 1998) ("a statement will receive first amendment protection only if it cannot be reasonably interpreted as stating actual facts about the plaintiff") (citations omitted). Finally, certain absolute or qualified privileges may protect defamatory comments. *Barakat v. Matz*, 648

N.E.2d 1033, 1038 (Ill. App. Ct. 1995).

In addition to arguing that the comments can be innocently construed, are expressions of opinion, and are subject to a qualified immunity, the defendants also argue that the alleged defamatory comments are not sufficiently specific and were not defamatory *per se*. The court will address the specific allegations argument first then end with the argument that the statements are not defamatory *per se*, as that argument is dispositive to this claim.

### a. Specific allegations

"'Generally, a defamation plaintiff fails to satisfy the requirements of notice pleading unless he specifically states the words alleged to be actionable.'" *Harris v. City of West Chicago*, No. 01 C 7527, 2002 WL 31001888, at *8 (N.D. Ill. Sept. 3, 2002) (citations omitted). Here, the defendants contend that the allegations against Fletcher regarding Brown's "issues" with Barazza following charges of sexual harassment against Brown that were "still open" are not sufficiently specific.

Brown attempts to rehabilitate the allegations in his complaint by stating in his response brief that the defamatory phrase by Fletcher was "The issue of the sexual harassment claims against you has not been resolved." Brown further asserts that "Fletcher made his comment in the context of a conversation involving an untrue accusation by Barazza that Dr. Brown had been spreading rumors about a fistfight involving Barazza and a third party on the show floor at the ADA Midwinter meeting." Resp. at 11. Thus, it appears that the statement which Brown believes is defamatory *per se* is Fletcher's alleged statement that "The issue of the sexual harassment claims against you has not been resolved."

As the court indicated earlier in this order, a plaintiff may add essential facts by brief as

long as they are consistent with his complaint. Although a close call, the court finds that the clarification in Brown's response as to the exact statement by Fletcher is consistent with the allegation in his complaint that "Fletcher mentioned that Dr. Brown has 'issues' with Barazza *following charges of sexual harassment against Dr. Brown that were 'still open*.'" Comp. at ¶48. (emphasis added). Moreover, Brown also alleges in his complaint that none of the other executives present at the meeting "were aware of any such [sexual harassment] charge before Fletcher's comment" and that "no such charge had ever been made against Dr. Brown." Comp. at ¶¶48-49.

Accordingly, because Brown's statements in his response brief are consistent with the allegations in Brown's complaint, Brown may add them by way of his response brief.

      b.    <u>Defamatory per se</u>

The defendants next contend that Fletcher's statements were not defamatory *per se*. According to Brown, Fletcher stated in an executive committee meeting that "the conduct of Gesse and Dr. Brown [regarding the alleged 30-minute public yelling session by Gesse at Brown] . . . would not be tolerated" and that "Dr. Brown had a strike against him." Although Brown does not respond to the defendant's argument in his response, Brown alleges in his complaint that "Fletcher's untrue statements imputed infidelity or adultery as well as dishonesty in his employment and were defamatory per se." The statement obviously does not impute infidelity or adultery. Does it imply a want of integrity in employment? The court finds that it does not. Brown alleges that "[t]he senior executives discussed the incident [i.e., the alleged confrontation between Geese and Brown in which Gesse supposedly yelled at Brown in public]" and then Fletcher made the comment that Brown (and Gesse's) conduct was not going to be tolerated and

long as they are consistent with his complaint. Although a close call, the court finds that the clarification in Brown's response as to the exact statement by Fletcher is consistent with the allegation in his complaint that "Fletcher mentioned that Dr. Brown has 'issues' with Barazza *following charges of sexual harassment against Dr. Brown that were 'still open*.'" Comp. at ¶48. (emphasis added). Moreover, Brown also alleges in his complaint that none of the other executives present at the meeting "were aware of any such [sexual harassment] charge before Fletcher's comment" and that "no such charge had ever been made against Dr. Brown." Comp. at ¶¶48-49.

Accordingly, because Brown's statements in his response brief are consistent with the allegations in Brown's complaint, Brown may add them by way of his response brief.

    b.    <u>Defamatory per se</u>

The defendants next contend that Fletcher's statements were not defamatory *per se*. According to Brown, Fletcher stated in an executive committee meeting that "the conduct of Gesse and Dr. Brown [regarding the alleged 30-minute public yelling session by Gesse at Brown] . . . would not be tolerated" and that "Dr. Brown had a strike against him." Although Brown does not respond to the defendant's argument in his response, Brown alleges in his complaint that "Fletcher's untrue statements imputed infidelity or adultery as well as dishonesty in his employment and were defamatory per se." The statement obviously does not impute infidelity or adultery. Does it imply a want of integrity in employment? The court finds that it does not. Brown alleges that "[t]he senior executives discussed the incident [i.e., the alleged confrontation between Geese and Brown in which Gesse supposedly yelled at Brown in public]" and then Fletcher made the comment that Brown (and Gesse's) conduct was not going to be tolerated and

that Brown had a strike against him. In the context of his discussion with the executive committee, the statement does not impute an inability to do his job as an executive at GCA or impute a want of integrity.

Specifically, according to the allegations, Fletcher told the executive committee about the supposed altercation and indicated that such conduct would not be tolerated. This comment does not indicate that Brown lacks integrity or is unable to do his job–it simply states that unprofessional behavior (particularly from its executives) is not something that GCA condones or allows. Indeed, in that it is essentially a comment about his relationship with a co-worker, Gesse, it is not *per se* defamatory. *Powers v. Delnor Hosp.*, 499 N.E.2d 666, 668 (Ill. App. Ct. 1986) (employer's statement regarding employee's relationship with coworker does not address a plaintiff's ability in his or her profession). The motion to dismiss on the ground that this comment was not defamatory *per se* is granted.

Brown also alleges that Fletcher's comment that "The issue of the sexual harassment claims against you has not been resolved" is defamatory *per se*. A court in this district recently addressed a defamation claim based on a similar statement and found that statements that the plaintiff had committed sexual harassment were not slanderous *per se*. *Castro v. Total Home Health, Inc.*, No. 03 C 8486, 2004 WL 1588261, at *4 (N.D. Ill. July 9, 2004). In *Castro*, the court stated:

> Defendants contend that the alleged defamatory statements [i.e., that plaintiff committed sexual harassment and which plaintiff alleged were false statements] are not slanderous[3] per se because they do not impute Plaintiff's lack of ability as a

---

[3] Although the *Castro* case addresses claims of slander, the *Castro* court noted that "[w]hile under common law, slander referred to the spoken word, and libel referred to the written word, this distinction is now moot in Illinois. and the same standard is applied whether spoken or

-12-

> Collector/Debtor and therefore do not fit into any of the slander per se categories. An employer's statements regarding an employee's relationships with other employees do not address a plaintiff's ability in his or her profession. *See Powers v. Delnor Hosp.*, 148 Ill.App.3d 844, 102 Ill.Dec. 109, 499 N.E.2d 666, 668 (Ill.App.Ct.1986); *Heying v. Simonaitis*, 126 Ill.App.3d 157, 81 Ill.Dec. 335, 466 N.E.2d 1137, 1143 (Ill.App.Ct.1984).
> . . . .
>
> Here, Plaintiff alleges that "statements ... that Plaintiff had committed sexual harassment[ ]" constitute slander per se. Plaintiff therefore has limited himself to allegations that do not refer to his ability as a Collector/Biller and has pleaded himself out of a claim of slander per se.

*Id*. This court agrees with the *Castro* court's reasoning and finds that Fletcher's alleged statement that "the issue of the sexual harassment allegations against you has not been resolved" is not defamatory *per se*. Accordingly, the defendants' motion to dismiss the defamation *per se* claim against Fletcher is granted. As such, the court will not address the defendants' other arguments.

    b.  <u>Defamation against Gesse and GCA</u>

  The defendants seek to have the defamation claim against Gesse dismissed on the ground that it is based on a non-actionable opinion and that his comments are protected by a qualified privilege. According to Brown, Gesse made the following defamatory comments:

> (1) In a meeting with a newly hired senior product manager, Gesse stated that Brown was incompetent, had no ability to teach the continuing education courses he was teaching, and was a candidate for firing by the company; and
>
> (2) In a meeting with several members of the GCA marketing department, Brown, and an outside publisher of several dental industry journals Gesse was

---

written words are at issue." *Id*. at *3 (*citing Medow v. Flavin*, 782 N.E.2d 733, 741 (Ill. App. Ct. 2003).

continuously abusive and denigrated Brown's ability by stating that GCA was all "f—ed up" because Brown was in charge of professional relations and could not solicit articles and get them published.

Under Illinois law, a "statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopp*, 8 F.3d 1222, 1227 (7th Cir. 1993). Whether a statement is a factual assertion (and thus is actionable if false), or is protected opinion is a question of law for the court. *See, e.g., Dilworthy v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996).

More specifically, a statement is protected by the First Amendment only if it cannot be "reasonably interpreted as stating actual facts." *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1220 (Ill. 1996) (*quoting Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Four considerations are relevant when considering whether this requirement has been met: (1) does the language have a precise and readily understood meaning, or is the language at issue loose, figurative, rhetorical, or hyperbolic, thus negating the impression that it presents actual facts?; (2) does the general tenor of the context in which the statement appears negate the impression that the statement has factual content?; (3) is the statement objectively verifiable as true or false?; and (4) does the social context and setting in which the statement was published support a conclusion that readers would readily consider the statement to be opinion, not fact? *Hopewell v. Vitullo*, 701 N.E.2d 99, 103-04 (Ill. App. Ct. 1998).

As to the comments that Brown was incompetent and had no ability to teach the

continuing education courses he was teaching and was a candidate for firing by the company, the court finds these statements to constitute opinion. As noted by one court, the broad scope of the word "incompetent" lacks the necessary detail to have a precise meaning as "there are numerous reasons why one might conclude that another is incompetent; one person's idea of when one reaches the threshold of incompetence will vary from the next person's." *Id*. (defendant's statement that plaintiff was incompetent was non-actionable opinion); *see also Quiroz v. Hartgrove Hosp*., No. 97 C 6515, 1999 WL 281343, at *15 (N.D. Ill. Mar. 25, 1999) (statements that plaintiff was "stupid" and "incompetent" were nonactionable opinion).

Further, the comments that he did not have the ability to teach continuing education courses and was a candidate for firing were also opinion. *Newman v. Hansen & Hempel Co.*, No. 01 C 9871, 2002 WL 31455990 (N.D. Ill. Nov. 1, 2002) (defendant's statement that plaintiff was "incompetent at her job" and "stupid" are opinions, not statements of facts); *Hopewell,* 701 N.E.2d at 102 (statement that officer was "fired because of incompetence" was nonactionable opinion); *Doherty v. Kahn*, 682 N.E.2d 163, 172 (Ill. App. Ct. 1997) (statements that plaintiff was fired because among other things he was "lazy," "incompetent," and "could not do his job or what was expected of him" were mere expressions of opinion, and not actionable defamation) (*abrogated on other grounds Byung Moo Soh v. Target Maktg. Sys., Inc*., 817 N.E.2d 1105, 1009 (Ill. App. Ct. 2004)).

The court finds the same to be true of the statement that GCA was all "f—ed up" because Brown was in charge of professional relations and could not solicit articles and get them published. Like the cases cited above, these statements indicate that they are Gesse's opinion of Brown's performance and thus do not constitute actionable statements of fact. Gesse's

comments are clearly hyperbole–it is hard to believe that anyone present at the meeting understood Gesse's alleged comment (i.e., that the entire company was "f—ed up" because Brown could not get professional articles published) to be a statement of fact.

Accordingly, the defendants' motion to dismiss the defamation claims against Gesse and GCA is granted.

## IV. Conclusion

For the reasons stated above, the court grants in part and denies in part the defendants' motion to dismiss [10-1].

**ENTER:** _____
**Blanche M. Manning**
**United States District Judge**

**DATE:** November 15, 2005